*NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| S.A., | : | |
| | : | Civil Action No. 15-3565 (JLL) |
| Plaintiff, | : | |
| | : | |
| v. | : | **OPINION** |
| | : | |
| EVELYN DAVIS, et al., | : | |
| | : | |
| Defendants. | : | |

**LINARES**, District Judge:

Presently before the Court are Defendants' motions to dismiss Plaintiff's complaint. (ECF No. 9, 12). Plaintiff, S.A., filed a brief in opposition (ECF No. 10), to which Defendants replied. (ECF No. 13). For the following reasons, this Court will dismiss Plaintiff's complaint without prejudice as moot.

**I.   BACKGROUND**

On March 29, 2010, Plaintiff, S.A., pled guilty to second degree attempted sexual assault in violation of N.J. Stat. Ann. §§ 2C:5-1 and 2C:14-2C(4) before the Superior Court of New Jersey, Law Division, in Bergen County, New Jersey. (Document 1 attached to ECF No. 1 at 2). On July 9, 2010, the Superior Court sentenced Plaintiff to four years' imprisonment, parole supervision for life, and the registration requirements applicable under New Jersey's Megan's Law. (*Id.*). Although Plaintiff does not provide detailed information regarding his conviction in the complaint, Plaintiff admits that his crime "consisted of sexual conversations [over the internet]

and an attempted meeting with a Police Officer pretending to be 14 years old." (ECF No. 1 at 6).

Following completion of his prison sentence, Plaintiff was placed under parole supervision. As part of his parole supervision for life sentence, Plaintiff was provided with numerous restrictions. (*See* Document 1 attached ECF No. 1 at 7-9). Among those restrictions was the following: "[Plaintiff is] to refrain from using any computer and/or deice to create any social networking profile or to access any social networking service or chat room (including, but not limited to, Myspace, Facebook, Match.com, Yahoo 360) in [Plaintiff's] name or any other name for any reason unless expressly authorized by the District Parole Supervisor." (*Id.* at 7). Plaintiff signed a form acknowledging these restrictions on November 1, 2012. (*Id.* at 9).

The Division of Parole imposed further restrictions on Plaintiff on July 19, 2013. (*Id.* at 11). Those additional restrictions were as follows:

> [Plaintiff is] to refrain from the possession and/or utilization of any computer and/or device that permits access to the Internet unless specifically authorized by the District Parole Supervisor. If the District Parole Supervisor permits use of a computer and/or device that is capable of accessing the Internet, [Plaintiff] understand[s] that:
>
> 1. [Plaintiff is] to refrain from accessing the Internet from any computer and/or device at any time or for any reason unless authorized by the District Parle Supervisor;
>
> 2. [Plaintiff is] prohibited from possessing or using any data encryption techniques or software programs that conceal, mask, alter, eliminate and/or destroy information and/or data from a computer and/or device;
>
> 3. [Plaintiff] agree[s] to install on the computer/device, at [his] expense, one or more hardware or software system(s) to monitor [his] computer/device use if such hardware or software system(s) is (are) determined to be necessary by the District Parole Supervisor;

> 4. [Plaintiff] agree[s] to permit the monitoring of [his] computer/device activity by a parole officer and/or computer/device specialist through the use of electronic means;
>
> 5. [Plaintiff is] subject to periodic unannounced examinations of the computer and/or device by a parole officer or designated computer/device specialist, including the retrieval and copying of all data from the computer device and any internal or external peripherals and removal of such equipment to conduct a more thorough inspection.

(*Id.*). The Division of Parole justified these further restrictions based on the fact that Plaintiff's conviction involved his "chatting online with whom he believed to be a 14 year old girl from New Jersey [and] engaging in a series of sexually explicit online conversations with an undercover Detective" posing as that 14 year old girl. (*Id.*).

On November 25, 2014, Plaintiff's parole officer conducted a home visit apparently related to Plaintiff's request that he be permitted to travel to Great Britain to visit his family. (Document 2 attached to ECF No. 1 at 3). During that visit, Plaintiff's parole officer asked him about a particular phone number, at which point Plaintiff produced an Apple iPhone 5 from his pocket and handed it to the Parole Officer so he could retrieve the phone number. (*Id.*). The Parole Officer then explained to Plaintiff that this was an internet-ready device, and that Plaintiff's possession of it violated the special conditions of his parole and asked Plaintiff whether he had any other such devices. (*Id.*). Plaintiff then produced a laptop, a tablet, and an external hard drive, as well as an apparently unopened ASUS laptop. (*Id.*). Plaintiff also had a second iPhone. (*Id.*). Plaintiff also admitted to having two e-mail addresses and to having visited a Pakistani news website on the first iPhone. (*Id.*). While perusing the phone, the Parole Officer also found a Facebook Application on the phone, and ultimately found that Plaintiff continued to possess a

3

Facebook account, although there was no clear indication that Plaintiff had made any postings to Facebook after being placed on Parole Supervision for Life. (*Id.* at 3-4).

Because Plaintiff's possession of the devices and a Facebook account violated two terms of Plaintiff's probation, a parole warrant was issued for Plaintiff's violations and Plaintiff was taken into custody on November 25, 2014. (*Id.* at 2). Following Plaintiff's arrest, he was briefly incarcerated in the Middlesex County Jail before ultimately being moved to the Central Reception and Assignment Facility (CRAF) at New Jersey State Prison in Trenton, New Jersey. (ECF No. 1 at 6; Document 1 attached to ECF No. 1 at 14). A notice of probable cause was provided to Plaintiff on December 1, 2014. (ECF No. 1 at 6).

Plaintiff appeared for a probable cause hearing on February 18, 2015, before a Parole Board hearing officer conducted via video conferencing. (Document 2 attached to ECF No. 1 at 2). After having the differences between a probable cause hearing and a parole revocation hearing explained to him, Plaintiff elected to waive the probable cause hearing and proceed with a parole revocation hearing on that date.[1] (*Id.*). During the hearing, Plaintiff's parole officer testified to the events recounted above regarding the discovery and seizure of the iPhones and computers discussed above. (*Id.* at 3). The officer also testified that he did not know whether the unopened computer had ever been used, and was unable to determine whether the seized laptop and tablet had been used by Plaintiff as neither could be activated for lack of power. (*Id.* at 3-4). The officer additionally testified that Plaintiff admitted to his use of the iPhone to access the news website, to his Facebook account, and that Plaintiff stated to the officer that one of the iPhones

---

[1] Plaintiff asserts in his complaint that he was entitled to a probable cause hearing within fourteen days of his arrest, but received no hearing until February 18, 2015. (ECF No. 1 at 6).

4

was a gift for his wife even though the phone was out of its packaging and found in Plaintiff's pockets.  (*Id.* at 3-4).

Plaintiff also testified at the revocation hearing.  (*Id.* at 4).  Plaintiff testified that his former flip phone, which he was allowed to use, had broken, and that his brother had thereafter given him one of the two iPhones to use so that he could be contacted by his parole officer.  (*Id.*). Plaintiff testified that the other iPhone and the unopened computer were gifts for his wife and children which his brother had purchased on his behalf.  (*Id.*).

Following testimony, counsel for Plaintiff made a closing argument in which he argued that Plaintiff had technically violated his parole by obtaining and using an iPhone, but should not be subject to sanction because his use of the phone was only a minor violation.  (*Id.* at 5). Counsel was also permitted to submit a written argument in which counsel presented essentially the same claims which are raised in this complaint: that Plaintiff should have received a full criminal trial and not merely a revocation hearing.  (Document 1 attached to ECF No. 1 at 14-22). The hearing officer, in rendering a decision, however, refused to consider these constitutional arguments as they were beyond the officer's scope and authority to consider.  (Document 2 attached to ECF No. 1 at 5).

Based on the evidence produced at the hearing, the hearing officer concluded that Plaintiff had violated both the condition of his parole requiring he refrain from using social media and the special condition prohibiting him from owning an internet-capable device without first receiving approval from the Division of Parole.  (*Id.* at 7-8).  Although the officer found that there was clear and convincing evidence that Plaintiff had committed these two violations, the officer concluded that Plaintiff's otherwise successful term of parole supervision – including Plaintiff's

5

gainful employment, lack of new charges, and continued sex offender treatment – made it unnecessary to revoke parole. (*Id.* at 8). The hearing officer therefore recommended that the Parole Board not revoke parole or re-imprison Plaintiff based on his two violations. (*Id.*). On March 11, 2015, the New Jersey State Parole Board entered a decision concurring with and adopting the recommendations of the hearing officer and ordering that Plaintiff would continue on parole supervision for life and not be subject to further incarceration on the basis of his current violations. (*Id.* at 10).

Plaintiff thereafter filed this action arguing that he had been denied due process during the revocation hearing on May 27, 2015. (ECF No. 1). On August 4, 2015, the state Defendants (all Defendants other than Mark Cranston and the Department of Corrections of Middlesex County) filed a motion to dismiss. (ECF No. 9). Plaintiff filed a brief in opposition thereto on August 25, 2015. (ECF No. 10). The county Defendants (Mark Cranston and the Department of Corrections of Middlesex County) followed suit and filed a cross-motion to dismiss on August 25, 2015, joining in full the arguments of the state Defendants and arguing that Plaintiff had made no claims specifically against the county Defendants. (ECF No. 12). The state Defendants filed a reply brief on September 1, 2015. (ECF No. 13).

## II. DISCUSSION

### A. Legal Standard

In deciding a motion to dismiss under Rule 12(b)(6), the Court must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether under any reasonable reading of the complaint, the plaintiff may be entitled to relief."

6

*Fair Wind Sailing, Inc. v. Dempster*, 764 F.3d 303, 308 n. 3 (3d Cir. 2014) (quoting *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008)). According to the Supreme Court's decision in *Ashcroft v. Iqbal*, "a pleading that offers 'labels or conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). To survive a motion to dismiss for failure to state a claim, a complaint must allege "sufficient factual matter" to show that its claims are facially plausible. *Fowler v. UPMS Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (citation omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Dempster*, 764 F.3d at 308 (quoting *Iqbal*, 556 U.S. at 678).

**B. Analysis**

Plaintiff seeks to bring claims against certain state officials for alleged violations of his Fourteenth Amendment Due Process rights pursuant to 42 U.S.C. § 1983. "To establish a claim under 42 U.S.C. § 1983, a plaintiff must demonstrate a violation of a right protected by the Constitution or laws of the United States that was committed by a person acting under the color of state law." *Nicini v. Morra*, 212 F.3d 798, 806 (3d Cir. 2000); *see also Woodyard v. Cnty. of Essex*, 514 F. App'x 177, 180 (3d Cir. 2013) (the statute provides "private citizens with a means to redress violations of federal law committed by state [actors]"). "The first step in evaluating a section 1983 claim is to 'identify the exact contours of the underlying right said to have been violated' and to determine 'whether the plaintiff has alleged a deprivation of a constitutional right at all.'" *Nicini*, 212 F.3d at 806 (quoting *County of Sacramento v. Lewis*, 523 U.S. 833, 841 n. 5

(1998)). Here, Plaintiff asserts that his parole supervision for life amounts to an ex post facto punishment and that his parole revocation hearings violated his Fourteenth Amendment Due Process rights in so much as he was not provided with a jury trial.

Underlying Plaintiff's § 1983 claims is the special statutory sentencing scheme which applies to certain sex offenders in New Jersey. Pursuant to N.J. Stat. Ann. § 2C:43-6.4(a), a criminal court sentencing any offender convicted of certain enumerated offenses, including attempted sexual assault, "shall [sentence the criminal defendant to], in addition to any sentence authorized by [New Jersey law], a special sentence of parole supervision for life." A sentence of parole supervision for life commences "immediately upon the defendant's release from incarceration." N.J. Stat. Ann. § 2C:43-6.4(b). While serving such a sentence of parole supervision for life, the convicted defendant "shall remain in the legal custody of the Commissioner of Corrections, shall be supervised by the Division of Parole of the State Parole Board, shall be subject to the conditions set forth [in N.J. Stat. Ann. §§ 30:4-123.51(b), 30:4-123.59-123.63, and 30:4-123.65], and shall be subject to conditions appropriate to protect the public and foster rehabilitation." *Id.* Pursuant to sections 2C:43-6.4(b) and (f), as part of a parole supervision for life, the parole board may impose any of several internet access restrictions including a prohibition on an individual using or accessing a computer or any other device with internet capability without the written approval of either the court or that person's parole officer. *See also J.I. v. New Jersey State Parole Bd.*, 441 N.J. Super. 564, 578, 120 A.3d 256, 263 (App. Div. 2015) (the Parole Board, rather than the Court, may impose the special restrictions provided for in § 2C:43-6.4(f) on offenders serving community or parole supervision for life). All those subject to parole supervision for life are also subject to multiple enumerated restrictions, including

8

that the offender refrain "from using any computer and/or device to create any social networking profile or to access any social networking service or chat room in the offender's name or any other name for any reason unless expressly authorized by the District Parole Supervisor." N.J. Admin. Code § 10A:71-6.12(d). Having established the legal background relevant to Plaintiff's claims, this Court will now turn to the arguments raised in Defendants' motions to dismiss.

### 1. Mootness

Defendants argue that Plaintiff's claims are moot or fail to present a case or controversy as Plaintiff has already been returned to parole supervision for life. "[A] federal court has neither the power to render advisory opinions nor to decide questions that cannot affect the rights of litigants in the case before [it]." *Sutton v. Rasheed*, 323 F.3d 236, 248 (3d Cir. 2003). This is so because Article III of the Constitution permits the federal courts to act only where there is an extant case or controversy. U.S. CONST. art. III, § 2; *see also Raines v. Byrd*, 521 U.S. 811, 818 (1997). "The existence of a case or controversy . . . requires (1) a legal controversy that is real and not hypothetical, (2) a legal controversy that affects an individual in a concrete manner so as to provide the factual predicate for reasoned adjudication, and (3) a legal controversy with sufficiently adverse parties so as to sharpen the issues for judicial resolution." *Rendell v. Rumsfeld*, 484 F.3d 236, 240 (3d Cir. 2007) (internal quotations omitted). A case becomes moot where "changes in circumstances that prevailed at the beginning of the litigation have forestalled any occasion for meaningful relief." *Id.* (quoting *In re Surrick*, 338 F.3d 225, 230 (3d Cir. 2003)).

In his complaint, Plaintiff seeks the following relief: a declaration that Plaintiff, in any revocation hearing, is entitled to a jury trial and bail on the issue; an injunction preventing the

Parole Board from subjecting Plaintiff or any other offender subject to parole supervision for life to the revocation process; a declaration that the current revocation process is unconstitutional; attorneys' fees and costs; and any other relief this Court deems just and equitable. (ECF No. 1 at 13-14). "The availability of declaratory [and injunctive] relief depends on whether there is a live dispute between the parties." *Donovan v. Punxsutawney Area School Bd.*, 336 F.3d 211, 216 (3d Cir. 2003) (quoting *Powell v. McCormack*, 395 U.S. 486, 517-18 (1969)). Plaintiff's requests for injunctive and declaratory relief arise out of his claim that the procedures used to incarcerate him following his violation of his parole were unconstitutional. Plaintiff, however, has since been released from incarceration and is no longer subject to the revocation procedures he claims are unconstitutional, nor is he subject to continuing harm sufficient to warrant injunctive relief. *See Williams v. Sec. Pa. Dep't of Corr.*, 447 F. App'x 399, 403 (3d Cir. 2011) (continuation of parole restrictions is not a consequence which can be addressed via a § 1983 action, and thus does not prevent mootness in such an action as it would in a habeas petition). As Plaintiff's release from incarceration and the termination of his revocation procedures have forestalled any occasion for meaningful injunctive relief in so much as they have completely eradicated the effects of the violation Plaintiff claims occurred (his incarceration without the protections required by Due Process), Plaintiff's injunctive relief claims are now moot. *Rendell*, 484 F.3d at 240; *see also Spencer v. Kemna*, 523 U.S. 1, 6-14 (1998); *Cnty. of Los Angeles v. Davis*, 440 U.S. 625, 631 (1979).

Plaintiff also argues, however, that his complaint is not moot because he has also raised claims for declaratory relief, and this Court should address those claims even if his injunctive relief claims no longer present a live controversy. Although it is true that "a request for declaratory

10

relief may be considered independently of whether other forms of relief are appropriate," declaratory relief is only appropriate where there remains a live dispute between the parties. *Powell*, 395 U.S. at 517-18. "[T]he question in each case is whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Md. Cas. Co. v. Pac. Coal & Oil Co.*, 312 U.S. 270, 273 (1941); *see also Harrow v. Prudential Ins. Co. of Am.*, 279 F.3d 244, 249 (3d Cir. 2002). Declaratory relief is prospective in nature, and therefore may not be used solely to address the propriety of past conduct. *See CMR D.N. Corp. v. City of Philadelphia*, 703 F.3d 612, 628 (3d Cir. 2013). Although Plaintiff attempts to word his requests for declarative relief in prospective fashion in so much as he asks this Court to declare that he was, and in the future would be, entitled to a jury trial on parole revocation, his claim is essentially backward looking in so much as it is addresses past conduct: his revocation hearings. As is explained below in terms of Plaintiff's argument that his claims are capable of repetition while evading review, there is no basis to presume that Plaintiff will again be subject to revocation because this Court presumes that Plaintiff is "able – and indeed required by law – to prevent such a possibility from occurring." *Williams*, 447 F. App'x at 404. Plaintiff is no longer subject to parole revocation proceedings, and as such he no longer has a legal interest of sufficient immediacy and reality to warrant declaratory relief, and his declaratory relief claim is thus moot.

Plaintiff argues, however, that his claims are not moot because any period of hearings related to parole revocation would be too brief for a full adjudication and he is likely to offend again in the future. Plaintiff is essentially invoking the exception to the mootness doctrine applicable to cases which are "capable of repetition while evading review." *Turner v. Rogers*, --

11

- U.S. ---, ---, 131 S. Ct. 2507, 2515 (2011). This exception applies to those cases where "the challenged action [is] in its duration too short to be fully litigated prior to its cessation or expiration, and (2) there [is] a reasonable expectation that the same complaining party [will] be subjected to the same action again." *Id.* (quoting *Weinstein v. Bradford*, 423 U.S. 147, 149 (1975)). Even if Plaintiff could show that the period of time during which a parole revocation hearing and its resulting potential period of incarceration was too short to be fully litigated as he argues, there must still be some reasonable expectation that Plaintiff would again be subject to a revocation hearing. *Id.*; *see also Spencer*, 523 U.S. at 17-18. Plaintiff, however, will not be subject to revocation procedures again unless he willingly violates one of the terms of his parole, terms he has acknowledged in writing and of which Plaintiff is clearly well aware.

Plaintiff's situation is not unlike that faced by immigration detainees who are released subject to an order of supervision, and could not be returned to immigration custody absent a violation of that order. In such cases, the Third Circuit has held that courts should not assume that a party will engage in conduct likely to place him in a position where he is subject to a repeat of the violations he currently challenges. *See, e.g., Nunes v. Decker*, 480 F. App'x 173, 175 (3d Cir. 2012); *see also Honig v. Doe*, 484 U.S. 305, 320 (1988). Based on that rule, the Third Circuit has in turn held that where a petitioner has been released from detention and could only be returned to detention by his own violation of an order of supervision, his case is moot as there is no reasonable expectation that the alleged violations of his rights shall recur. *Nunes*, 480 F. App'x at 175. Plaintiff's situation is similar. He has been released from detention and returned to parole supervision. He will not again face revocation unless he willingly violates one of the conditions of his parole. As this Court will not assume that Plaintiff is likely to so violate the

12

terms of his parole, there is no reasonable expectation that Plaintiff will again be subject to the procedures he challenges here. *Williams*, 447 F. App'x at 404. As such, his case is not capable of repetition while evading review, and remains moot.

Plaintiff finally suggests that his complaint is not subject to dismissal on mootness grounds because a claim for nominal damages may be presumed even if Plaintiff has not requested such damages. In his complaint, Plaintiff does not seek damages, but instead seeks only prospective relief, attorneys' fees, and "[a]ny other relief this Court deems just and equitable." (ECF No. 1 at 14). Plaintiff is correct to the extent that he asserts that nominal damages are available even without proof of an actual injuries for violations of procedural due process. *See, e.g., Farrar v. Hobby*, 506 U.S. 103, 112 (1992). It is likewise true that at least one court in this circuit and several courts of appeals in other circuits have held that nominal damages alone are sufficient to prevent a case from becoming moot. *See Freedom From Religion Foudation, Inc. v. Connellsville Area School District*, --- F. Supp. 3d ---, ---, 2015 WL 5093314, at *10-11 (W.D. Pa. 2015). What is not true, however, is that a claim for nominal damages is always implied in a complaint brought pursuant to § 1983 and that this Court should read such an implied claim into Plaintiff's complaint. *See A.P. Boyd, Inc. v. Newark Public Schools*, 44 F. App'x 569, 571 (2002); *see also Arizonans for Official English v. Arizona*, 520 U.S. 43, 71 (1997) ("a claim for nominal damages, extracted late in the day from [the plaintiff's] general prayer for relief and asserted solely to avoid otherwise certain mootness [bears] close inspection"); *Fox v. Bd. Of Trustees of the State Univ. of N.Y.*, 42 F.3d 135, 141-42 (2d Cir. 1994) (refusing to read a claim for nominal damages into a complaint's general request for "such other relief as the Court deems just and proper" where the complaint otherwise seeks only prospective relief and attorneys' fees in the absence of any claim for

13

damages). Plaintiff's complaint contains no claim for damages, nominal, compensatory, or punitive, and this Court will not read into the complaint such a request. Plaintiff's final argument therefore fails to provide any support for the contention that his complaint, as currently filed, is not moot. Plaintiff's complaint will therefore be dismissed without prejudice as moot. Because Plaintiff could presumably amend his complaint to assert a claim for nominal damages which would not be moot, however, this Court will briefly address the merits of Plaintiff's Due Process claims as an alternative basis for the dismissal of those claims.

**2. Plaintiff's Due Process Claims**

Plaintiff's chief contention is that his due process rights were violated during his parole revocation hearing in so much as he was not provided a jury trial although he was subject to additional jail time. The Supreme Court has held, however, that

> the revocation of parole is not part of a criminal prosecution and thus the full panoply of rights due a defendant in such a proceeding does not apply to parole revocations. Parole arises after the end of the criminal prosecution, including the imposition of sentence. Supervision is not directly by the court but by an administrative agency, which is sometimes an arm of the court and sometimes of the executive. Revocation deprives an individual not of the absolute liberty to which every citizen is entitled, but only of the conditional liberty properly dependent on observance of special parole restrictions.
>
> . . . .
>
> . . . [T]he liberty of a parolee, although indeterminate, includes many of the core values of unqualified liberty and its termination inflicts a 'grievous loss' on the parolee and often on others. It is hardly useful any longer to try to deal with this problem in terms of whether the parolee's liberty is a 'right' or a 'privilege.' By whatever name, the liberty is valuable and must be seen as within the protection of

14

> the Fourteenth Amendment. Its termination calls for some orderly process, however informal.

*Morrissey v. Brewer*, 408 U.S. 471, 480-82 (1972).

Based on the liberty interest at stake, however limited, the Supreme Court determined that to comport with due process, a convicted criminal must receive the following process during his parole revocation proceedings:[2] "(a) written notice of the claimed violations of parole; (b) disclosure to the parolee of the evidence against him; (c) opportunity to be heard in person and to present witnesses and documentary evidence; (d) the right to confront and cross-examine adverse witnesses (unless the hearing officer specifically finds good cause for not allowing confrontation); (e) a 'neutral and detached' hearing body such as a traditional parole board, members of which need not be judicial officers or lawyers; and (f) a written statement by the factfinders as to the evidence relied on and reasons for revoking parole." *Id.* at 489. In so holding, however, the Court was quick to note that there was "no thought to equate [a parole revocation hearing] with a criminal prosecution in any sense." *Id.* Although the Court declined to consider whether the right to retained counsel or appointed counsel for indigents attached at the revocation hearing, *see*

---

[2] *Morrissey* also requires a preliminary hearing before a hearing officer not directly involved in his parole to determine probable cause exists within a "reasonable time" of a parolee being arrested following a parole revocation hearing. 408 U.S. at 485-86. At or before such a hearing, the parolee must receive notice of the alleged violations and the date of the hearing prior to its occurrence, the opportunity to appear and speak on his own behalf, the right to present documentary evidence and witnesses, and the parolee may request to cross examine witnesses against him subject to certain restrictions. *Id.* at 486-87. The hearing officer must also summarize the hearing and determine if there is probable cause to hold the parolee pending a final decision of the parole board as to revocation, and must summarize the basis for that determination either on the record or in writing. *Id.* at 487. In this case, Plaintiff chose to waive the preliminary probable cause hearing, and these requirements are therefore not relevant to Plaintiff's challenge which is truly aimed at his revocation hearing.

*id.*, New Jersey has since decided to provide those subject to parole revocation with the right to retained counsel and the right to appointed counsel for indigents. *See, e.g.*, N.J. Admin. Code § 10A:71-7.7(c)(2).

*Morrissey*, on its face, then, appears to contradict Plaintiff's assertion that he is entitled to a jury trial for the revocation of his parole supervision. Plaintiff argues, however, that in cases such as his where parole supervision is levied in addition to any sentence of jail time, rather than accepted by a convict in place of continued incarceration, any return to prison is essentially the imposition of additional jail time without a jury finding in violation of *Apprendi v. New Jersey*, 530 U.S. 466 (2000), and its progeny. Under the *Apprendi* line of cases, "[a]ny fact (other than a prior conviction) which is necessary to support a sentence exceeding the maximum authorized by the facts established by a plea of guilty or a jury verdict must be admitted by the defendant or proved to a jury beyond a reasonable doubt." *United States v. Booker*, 543 U.S. 220, 244 (2005); *see also Blakely v. Washington*, 542 U.S. 296, 313-14 (2004); *Apprendi*, 530 U.S. at 490. Plaintiff's argument, essentially, is that if a judge cannot sentence a defendant to jail time beyond the statutory maximum without a requisite plea or jury finding, an executive agency could similarly not so extend a criminal defendant's sentence.

The problem with Plaintiff's argument, however, is that it assumes that the necessary facts were not *already* established in a defendant's underlying criminal conviction. Pursuant to New Jersey Law, a defendant is subject to parole supervision for life, and the potential for further incarceration as a result of any violation thereof, by virtue of a defendant's guilt as to any of the underlying crimes, including attempted sexual assault. *See* N.J. Stat. Ann. § 2C:43-6.4(a). No additional fact finding beyond Plaintiff's having committed attempted sexual assault, to which he

pled guilty, was required for the imposition of Plaintiff's parole supervision for life sentence. *Id.* Plaintiff was subject to parole supervision, and the attendant restrictions on his liberty, because of his conviction and the sentence imposed upon him as a result of that conviction. Because of those restrictions to which Plaintiff was lawfully sentenced, he was subject to the revocation of parole, and in those revocation hearings he was entitled only to the due process protections set forth in *Morrissey*. A revocation of parole is not a separate criminal trial, and an administrative revocation hearing cannot be equated with a criminal prosecution. *Morrissey*, 408 U.S at 480-81, 489. Plaintiff has failed to provide any case law, other than his *Apprendi* argument, which supports his assertion that a parolee subject to revocation is entitled to a jury trial. Controlling Supreme Court case law instead requires that this Court find quite the opposite. Plaintiff's due process claim, which he attempts to characterize as violations of his Sixth Amendment right to a jury trial, fail as a matter of law, and thus Plaintiff fails to state a claim for relief in so much as he claims he was denied a jury trial.

Although it is not clear that Plaintiff seeks to assert a claim that he was denied the process required by *Morrissey*, to the extent that Plaintiff does assert that claim, it is belied by Plaintiff's allegations and the documents he attaches to his complaint. Plaintiff was provided with written notice of the claimed violations, and was provided with the evidence against him at the hearing. Plaintiff likewise was provided the opportunity to be heard and present any witnesses he may have had. Plaintiff also was permitted to confront and cross-examine his parole officer who served as the sole witness against him. The decision as to his parole revocation was first recommended by the hearing officer, who had no connection to Plaintiff's case, and was ultimately adopted by members of the parole board as permitted by *Morrissey*. Finally, Plaintiff received written

summaries of the evidence relied upon and the reasons for the parole board's decision as to his revocation. As such, all of the requirements of *Morrissey* as to the final revocation hearing appear to have been met, and Plaintiff's complaint does not appear to state a claim for a due process violation on that basis. *Morrissey*, 408 U.S. at 489.

Plaintiff also claims that the Due Process clause requires that he be entitled to bail during parole revocation hearings. Nothing in *Morrissey* suggests that a parolee is entitled to bail during the revocation process. Instead, *Morrissey* directly posits that it is the purpose of the probable cause hearing to determine whether it is proper to hold the parolee prior to a final decision regarding whether he violated parole. 408 U.S. at 486-87; *see also Burgess v. Roth*, 387 F. Supp. 1155, 1162 (E.D. Pa. 1975). New Jersey caselaw likewise provides that a parolee is not so entitled under the New Jersey constitution. *See State v. Garcia*, 474 A.2d 20, 21-22 (N.J. App. Div. 1984). Plaintiff provides no basis to support the assertion that he is entitled to bail during revocation hearings. As Plaintiff has provided no basis for his assertion that he was entitled to bail during the revocation process, and the relevant state and federal case law hold otherwise, Plaintiff's bail claim also fails to state a claim for relief.[3]

Finally, Defendants Mark Cranston and the Middlesex County Department of Corrections move for dismissal arguing that Plaintiff has failed to allege any facts connecting them to the alleged constitutional violations as their only role in Plaintiff's claims arises from the fact that Plaintiff was briefly held in the Middlesex County Jail during his parole revocation process. "A

---

[3] Plaintiff also briefly claims that the conditions of his parole supervision amount to an Ex Post Facto law, which would purportedly violate U.S. Const. art. I, § 10. As Defendants do not appear to address that claim in their motions to dismiss, this Court will not address that claim substantively here, and will instead only dismiss that claim without prejudice as moot.

defendant in a civil rights action must have personal involvement in the alleged wrongs." *Solan v. Ranck*, 326 F. App'x 97, 100 (quoting *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988)); *see also Iqbal*, 556 U.S. at 676-77; *Tenon v. Dreibelbis*, 606 F. App'x 681, 688 (3d Cir. 2015). The wrongs Plaintiff alleges are not related directly to his incarceration, but rather to the alleged denial of due process resulting in that incarceration. Plaintiff has pled no facts connecting Cranston or the Middlesex County Department of Corrections to Plaintiff's Due Process and related claims, and as such he has not established their personal involvement. Thus, Plaintiff's claims must be dismissed as to those two Defendants for that reason as well.

## III. CONCLUSION

For the reasons stated above, this Court will DISMISS WITHOUT PREJUDICE Plaintiff's complaint as moot. An appropriate order follows.

Hon. Jose L. Linares,
United States District Judge